Oyez, oyez, oyez, all persons having any manner or form before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Good morning, everybody. Welcome to sitting of the United States Court of Appeals for the Fourth Circuit, or given the venue, the Fourth Circuit in concert. We're pleased to be here this morning along with my colleagues, Judge Agee and Judge Benjamin. We have three cases on for hearing this morning, and we'll begin with 23-1252, OSRX, Inc. v. Anderson, Mr. Bach. Thank you, Your Honors, please support. Appellant's contention in this case is that Gregory Anderson engaged in an eight months long campaign to steal its trade secrets. And then in the final two months of that, or two weeks of that campaign was aided and abetted by Imprimis, his co-defendant. It is our contention that the district court made three primary errors at the lower level. First, it dismissed plaintiff's claims against Imprimis for lack of personal jurisdiction. Second, it dismissed ORX's claims against Anderson and compelled arbitration despite the fact that OSRX is not a signatory to any arbitration clause with Mr. Anderson. And finally, that the district court denied as moot our motion for a preliminary injunction seeking to ensure that Mr. Anderson did not use or disclose our trade secrets in an improper manner. Can I ask you about that last issue first, and I'm sorry to take you out of order, but why didn't you move to more expeditiously pursue that particular form of relief? And related to that, it's been what, three plus years since the litigation ensued? So hasn't that ship sailed with respect to preliminary relief? Your Honor, I would say that first, we moved immediately for a TRO. That was denied. We again moved for a TRO. We moved twice for expedited discovery. The court waited seven months to conduct a hearing. By the time it conducted a hearing, it ruled on matters that did not involve a preliminary injunction and then failed to consider the preliminary injunction at all. I would say that in the lower court filings, Your Honor, Mr. Anderson represented both in his declarations and to the court that he understood his obligations with regard to the trade secrets, that he had only misappropriated these materials in order to protect his reputation and to prevent, in the case that the plaintiffs began disparaging him. And he represented at the lower court and in his declarations that he would continue to hold these materials until ordered by the court. And so I actually don't think if this court- How much time passed between the time Mr. Anderson left employment and your suit was initially filed? I believe it was, he left on May 6th, and I believe we initially filed on June 2nd. And you asked for a TRO when we did that? I believe we filed for that the next day, or it might have been the 7th, Your Honor. Well somewhere along the line, if I'm remembering this correctly, the district court found that all of your claims against the defendant fall within the broad scope of the arbitration provision that's in the employment contract. So did you specifically appeal that finding? As to OSRX, yes, Your Honor, we did. As to ocular science, we did not. And where would I look in the appendix to find that specifically? As to the appeal for OSRX, or as to- I'm sorry. Well, if OSRX is the one that you say appealed that factual finding, where do I find you noting that particular language of appeal? As to the arbitration clause, Your Honor? Right. The district court made a finding that all of the claims fell within the broad scope of the arbitration provision. And I may- and I apologize, I want to just make sure that I'm answering your question. I believe that our appeal begins in the joint appendix at the beginning of our brief, but I'm sorry, Your Honor, I don't have the specific citation, but I believe it's contained within the substantive portions of our brief. But I think what you're asking me is, where did we appeal the specific language? And I do know in our brief, we cite to California law concerning the interpretation of an arbitration clause and that here, the language of the employment agreement speaks to submitting causes to arbitration, only those that arise out of or relate to the employment of Mr. Anderson with ocular science, a separate but affiliated entity. Well, we all know that there's an equitable principle that permits a court to find that a non-signatory who seeks the benefit of those contractual relations to be bound by them. And I remember incorrectly that the suit that was brought, including by the OSRX, included a breach of contract claim. It did, Your Honor. All right. So, the language of the arbitration provision seems to be fairly broad. All disputes arising out of or relating to my employment or relationship with the company. So, it would seem like there's a good argument that your trade secrets and related contentions fall within that language. I think, Your Honor, under this court's jurisprudence, an international paper company and its progeny, I think that the court has to look to the factual foundation for every claim that is asserted by the plaintiff. And, Your Honor, in American Banker Group, this court reasserted that the court's obligation is to examine the underlying allegation as to each cause of action brought into the contract. Do you agree that under international paper that you would be considered an affiliate? I think yes, Your Honor. I think we would be an affiliate under international paper. But, again, the test that was applied by the district court was not third-party beneficiary or affiliate. The test that was applied by the district court was direct benefits estoppel. Under the direct benefits estoppel test, we look to see whether or not the underlying allegations, whether or not our underlying allegations assert or rely on the contracted issue. With regard to the breach of contract action, I would just like to mention, I think it's important to look specifically at what was alleged. The plaintiff's alleged that Mr. Anderson breached his contract by stealing trade secrets, which is a duty that arises independently of the contract and is not dependent on it. The plaintiff's also alleged that he breached his contract by— It would also be a breach of that contract, wouldn't it? It would, Your Honor. And I think it's very similar to what this court pointed out in R.J. Griffin, which was that when you have, for example, a homeowner's association suing on two duties that arise independently of the contract, the fact that they could have also sued for breach of contract does not necessarily mean that the two causes of action that arise independently of the contract are subject to the arbitration agreement. Well, you might have a stronger case if you hadn't sued for breach of contract, but you did sue for breach of contract, and then you tried to—well, and now you're trying to excise certain claims from the scope of the arbitration clause, which just seems to speak directly to this issue of whether or not your client should be stopped from doing that. Your Honor, and I understand that, but again, I would say it's important to look at specifically what was alleged in the breach of contract action. The allegation was you stole our trade secrets. Under the South Carolina Trade Secrets Act— Wouldn't that go to the confidentiality portion of the agreement? Your Honor, as to the confidentiality portion of the agreement, it is our contention that whether or not you rely on the confidentiality language or look at the trade secrets— information that is defined as confidential in an agreement can also be a trade secret by definition. Here, Your Honors, the allegations that OSRX are bringing is that the theft of trade secrets or confidential information was a breach of his contract, but it also gives rise to independent duties and causes of action. Under the Federal Trade Secrets Act, the Defense of Trade Secrets Act, South Carolina Trade Secrets Act, it could also give rise to causes of action for intentional interference with contractual relations, prospective contractual relations, and the items that we've enunciated in our briefs. And I would also point out that the misappropriation, misuse of the trade secrets is activities that occur after his employment ended. He had the right, legally, to be in possession of our trade secrets until May 6th of 2022. He did not have the right to use or disclose those trade secrets or to even remain in possession of them after May 6th, 2022, when his employment— But for his employment relationship, though, he would have never been privy to those trade secrets. That is correct, Your Honor. But again, I would say that his duties—I mean, the South Carolina Arbitration Act 39-830B specifically states that an employee has a duty to keep an employer's trade secrets confidential, independent of any employment relationship or contract. And so those duties, his obligation to keep those trade secrets secret and then not to misuse them after his—to return them and then not to misuse them after his employment are independent of any contractual duties that he has. And so these—just like in R.J. Griffin, there was a contract that the Homeowners Association was a third-party beneficiary of, and the Homeowners Association could have brought actions under that contract, just because it could have—it asserted two causes of action—negligence of breach of implied warranties that arose outside of the contract and therefore could proceed outside of arbitration. And so, Your Honor, we would ask the court to allow OSRX to proceed on its claims that do not arise out of or depend on the employment contract in the lower court. Your Honor, if I may, I would like to address the personal jurisdiction issue, if there are no more questions on arbitration. There is no allegation here that there is any employment—that there is any arbitration agreement or contract between OSRX, Ocular Science, and Imprimis. Imprimis' motion to dismiss was granted entirely on lack of personal jurisdiction. Neither party contends that an evidentiary hearing was conducted. The appellee's brief speaks entirely to trying to shoehorn the district court's order into a prima facie analysis, even though the district court appears to have applied for ponderance of the evidence. Anybody ever—and I read the text entry that says you've got 20 minutes to argue. Anybody ever ask for an evidentiary hearing? Well, Your Honors, we did ask twice for expedited discovery, and so—and that was ignored. That request was ignored until after the motion to dismiss was granted, at which point the court deemed that request moot. Our requested discovery included interrogatories, requests for production, and a 30B6 notice to Imprimis that had interrogatories, requests, and seeking testimony on issues and topics directly related to Imprimis' activities, their solicitation with Anderson, their solicitation with our customers, their efforts to induce Anderson to breach his employment contract, and other actions that would have bore on the jurisdictional analysis. Well, when you were in the hearing, short as it may have been, did you tell the district court you have to—if you don't have an evidentiary hearing, you've got to apply a prima facie standard, not a preponderance of the evidence standard? I believe that we did assert that the prima facie standard was being used. I don't believe that there was ever any contrary contention that a preponderance of the evidence standard should be applied in this case at the lower court level. And the amount of evidence that the appellant submitted on the jurisdictional analysis was substantial. Imprimis stated in its reply in support of its motion to dismiss at the lower court level that the most glaring flaw of plaintiff's argument is that Anderson does not service SC customers as an agent of Imprimis. This in spite of the fact that on August 15, 2022, the plaintiffs learned that Anderson had solicited Griffin Eye Center, a South Carolina customer whose primary operations are in Myrtle Beach, South Carolina, which was one of Anderson's accounts when he was an employee of appellants, a top five Southern account in the Southern region, and that we lost this business. That was in Mr. Garner's affidavit, J340-341. That evidence, Your Honor, certainly rebutts the idea that Mr. Anderson, a South Carolina resident and an agent of Imprimis at the time, has directed all of his activities outside of the state of South Carolina. Your primary argument, I take it, is the district court used the wrong standard. That's correct, Your Honor. So if we just assume that we agreed with you, how does that affect the preliminary injunction analysis? Well, I'd certainly say, Your Honor, with regard to the preliminary injunction analysis, that first, Anderson can be enjoined whether those claims are compelled to arbitration or not under Merrill Lynch v. Bradley. But with regard to Imprimis, I would certainly say, to the extent that they are in possession of our trade secrets, something that they deny, the court as to grounds, I think, grounds three, five, and six of our requested relief on the TRO, we sought things that they actually in their briefing at the lower court level conceded were appropriate, that they would not misuse or disclose our trade secrets, that they would return our trade secrets to us, that they would account for those things that are in their possession. And with regard to the preliminary injunction, and I see my time's running up, I would just mention, we are currently at the mercy of Anderson. He has said that he is holding this information in case we disparage him. So we are relying on his good judgment, if this case ultimately goes to California, and his definition of disparagement or harm to make sure that he doesn't disclose those things. I don't believe the court requires that. I don't believe the law requires that. And at a minimum, a preliminary injunction should be entered as to that. I see that I'm out of time. Your Honors. Thank you, Mr. Buck. You have some time left for rebuttal. Mr. Wesley. Thank you, Your Honors. May it please the court, Keith Wesley for the appellees Anderson and Imprimis. And I'd like to thank the Fourth Circuit, as well as the College of Charleston, for the opportunity to argue here. This case belongs in California. The plaintiff, Ocular Science, is in California. Ocular Science drafted the employment agreement at issue. It put in a California choice of law provision and a California form selection clause. Ocular Science, as we just heard from my friend on the other side, did not challenge that the claims against Ocular Science are headed to California. So we know this. The corporate defendant here, Imprimis, is based in California. So let's cut to the chase. What's Ocular Science asking us to do? It's asking this court to rule that while the claims against the lone South Carolina resident are going to be arbitrated in California, that there should be a case here on the same facts. Let me ask you a question regarding the standard, because I wasn't clear as to your position. Their position is that there's an error because the judge used the wrong standard review preponderance of the evidence rather than the prima facie standard. And in reading your briefs, I wasn't clear as if you were conceding that or if you were contesting that. We are saying that, number one, it's not entirely clear from the district court's order which standard would apply. But what is clear in the district court's order is that the district court held that whichever standard applied, jurisdiction would be denied. Can you show us where he said that? Because the only reference that I saw was to a preponderance of the evidence standard. That's it, JA 414, your honor. And to quote second line, the record and indeed the plaintiff's allegations and arguments alone establish only that Imprimis knew of Anderson's prior employment with plaintiffs and then goes on. So the district court is saying the evidentiary record does not support jurisdiction. The allegations and argument do not support jurisdiction. So either way, Imprimis prevails on the motion. But ultimately, under this court's. So you think the district court used both standards or used them alternatively? I'm not sure, your honor. You're not sure, then why shouldn't we send it back to the district court to be sure? Because the district court made clear in the order that regardless of which standard applied, whether we're looking at the allegations alone or the evidence. That there is no jurisdiction in this case, and there isn't the preponderance of the evidence standard clearly should apply. This court in Grayson said that as with many pre trial motions, a court has broad discretion to determine the procedure that it will follow in resolving a 12B2 motion. Can I ask you, so you say there isn't, but if we assume the allegations of the complaint and what little evidence, the evidence that was presented at the jurisdictional hearing, I don't think anyone disagrees that simply being an employee of a company in a resident state by itself isn't enough to warrant attaching jurisdiction just as a general principle. But if the allegation is that Mr. Anderson committed tortious acts in South Carolina, and he did so on behalf of his principal, and that seems to be the allegation. Why isn't that enough to suffice for personal jurisdiction? Two reasons, your honor. The first is in the cases that the court is describing in the cases in this area where they find jurisdiction, the theft occurs in the forum state. In other words, the property that is stolen is stolen from the plaintiff in the forum state. Here, the plaintiff is in California. The property that Mr. Anderson allegedly stole, and granted we're in a world of intellectual property here, but the property that was stolen was in California. So, Mr. Anderson could have been in Florida. He could have been driving through Alabama. There isn't purposeful availment, even assuming that impremise was involved, which, according to the district court, he rejected that based on the evidence. So, number one. Most of the counsel included in their argument an example, I don't remember the name of the company that had been a client of Ocular and then became a client of Imprimis in South Carolina, and they alleged that the plaintiff was the one who made that happen. So, this kind of goes back to Judge Diaz's question. Why wouldn't an agency principle be sufficient to engender jurisdiction here? Well, a couple of reasons, Your Honor. The first is that in their opening brief, they said that the agent principle jurisdictional analysis is only relevant when, or can be relevant despite a showing of a lack of purposeful availment, and that's just not the standard. We have to show purposeful availment, and the fact that there's an agent principle relationship is not a loophole that gets them out of the purposeful availment standard. So, would you say that it was incumbent on Ocular Science OSRX to present some proof that Imprimis had directed Anderson to furloughing certain clients in order for there to be personal jurisdiction? Absolutely, Your Honor, because otherwise any plaintiff could come in when a former employee is hired by a new company and say, upon information and belief, we see that this new, our former employee is now in the marketplace, and so they must be conspiring with their new employer. We have no who, what, where, when. We have no details. We have no link in the evidence between any Imprimis personnel and Mr. Anderson. In fact, I would scour the record to try to find a name from somebody at Imprimis who was involved in this conspiracy to use OSRX's trade secrets. So, can I ask a follow-up on that? So, the who, what, when, where, and why might be relevant if we were dealing with a preponderance of the evidence standard, but if, in fact, the district court was bound to apply and apply to prima facie standard, then we take the facts and allegations as assumed by the plaintiff to be correct, right? And we don't rely on evidence at that point. I would say the court is correct subject to one caveat, and that caveat is Iqbal Twombly. We don't take every allegation as correct. We take well-pleaded allegations as correct. And so, a plaintiff cannot come in and simply parrot the legal standards, the legalese, and say, well, we've pled that there's a conspiracy. We've pled that they've aided and abetted, and that's enough. It isn't. You still need some forms of some detail to show what is going on, and they just didn't do that, even in their pleadings. And that's what, on JA-414, Judge Kane said. It's not just the lack of evidence. It's also the lack of allegations. So, should there have been a burden on Ocular to have requested an evidentiary hearing in this circumstance, or would it have been yours, or neither? Well, the burden is on the party seeking jurisdiction. And this case, Your Honor, is just like a case from 2018 called Sneha Media. There, like here, the plaintiff, there was no evidentiary hearing, no live witnesses. There, like here, the parties did not submit jurisdictional discovery, but instead submitted affidavits and evidence. There, like here, the parties appeared at a motion hearing and argued the facts and law, and there, like here, and this is the important part, this court said no party sought to present additional evidence to the court. And what did this court hold in those circumstances? It says, whereas here the court does not preclude the parties from pursuing jurisdictional discovery and holds a hearing in which the parties may present relevant evidence and legal arguments based on a developed record, plaintiffs will be held to the burden of establishing personal jurisdiction by a preponderance of the evidence. So, Judge Koehn did exactly what this court... We don't know here, unless somebody can point this out in the appendix, whether anybody ever asked for an evidentiary hearing or ever mentioned to the district court, well, maybe we ought to get a little evidence here before we go on, which I think distinguishes this from the case you're discussing. I'm not aware of anyone asking for additional evidence. The record shows, I read the hearing from the district court level. At no point did the plaintiffs say, time out, Your Honor, we really need this deposition in order to prove our point. We really need to talk to impermits. Give us 20 more minutes and we will prove our point. None of that. And so, if they are saying that a preponderance of the evidence standard should not apply, it was incumbent on them to ask for something beyond what the court in Sneha said was adequate for the preponderance standard to apply. Well, but to be clear, if in fact none of that happened, I don't think the court should have applied the preponderance of the evidence standard, right? It should have been a prima facie standard. If there was no evidence solicited or asked for, if all we got is the pleadings and some limited information in the record, then at that point, it's not a preponderance of the evidence standard. I respectfully disagree, Your Honor. Under Sneha Media, it says that you do not need live testimony for the preponderance of the evidence standard to apply. It said everything was on it, affidavits and exhibits and legal briefs. It said all that is required is a fair opportunity to present to the court. So, I do not believe that an evidentiary hearing is required under Fourth Circuit case law in order for the preponderance standard to apply. Well, let's just assume for purposes of argument that we were to disagree with you on the personal jurisdiction issue and agreed with the plaintiffs, what effect does that have on the preliminary injunction determination? Well, I suppose then the claims against Anderson will be sent to arbitration, as the panel pointed out. It's been three years, three or more years since those claims were initially brought. I suppose that Anderson could, or excuse me, the plaintiffs could then seek injunctive relief in the arbitration if, after three years, they still believe there's an emergency that necessitates it. And I suppose the case against Imprimis would go back and the district court would look at alternative grounds for transferring this case to California. In other words, improper or inconvenient venue. And if, again, the plaintiffs believe that after three years there was still an emergency and there was grounds to do it in good faith, they could re-petition the district court for a preliminary injunction. Ultimately, I think we're spending a lot of time here and in the district court, if you were to send any piece back, on procedural machinations that shouldn't matter. Because I believe ultimately what's going to happen, because we have ocular science and I believe OSRX going to have to arbitrate in California, the claims against Imprimis are either going to get sent to California or going to get stayed pending that arbitration. And so we are spending a lot of time and effort on very interesting legal issues. Well, believe it or not, sometimes we're all about procedural machinations. I understand. Let me ask you related to that, and I'm sorry to harp on this. So the district court said several things about the preliminary injunction issue. First, that the issue was moot because the case was going to arbitration. And second, that even if it was not moot, the district court was not inclined to grant relief because there was no carve-out in the agreement that would have allowed the court to do that. I don't know that I agree with either one of those, because I think the fact that the court transferred the case to arbitration doesn't necessarily make the case moot. The court, in theory, still has jurisdiction over the case. And second, wasn't there, in fact, a carve-out provision in the agreement that said that either party could pursue remedies under the California Arbitration Act, which includes the ability to seek a TRO and preliminary injunction relief? A few responses, Your Honor. First off, standard of review, abuse of discretion. So with all due respect, if this panel was— If the judges on this panel were sitting in the district court level and would have granted an injunction or would have issued a different opinion, that's not the question here. It's, did the district court abuse its discretion? Now, did the district court know that it at least had the discretion to enter an arbitration despite the arbitration provision? I think it did. Here's why. JA-416, district court says in its order that it is declining to do so. In other words, it's not saying, I don't have the power to do so. It's saying, I am declining granting the injunction. And that explains why, because it thought there was too much delay. But isn't that what Aguero, I'm probably going to pronounce it wrong, says that the district court could not do? Is that similar to what happened in that case? I'm sorry, you're on mute. Isn't that similar to what happened in the, I think it's Aguero, Aguero case, where the district court said that it was improper, where the district court said it was improper for the district court to say, just simply say it was moved? Aguero, in Aguero, it was clear that the district court did not believe it had the legal authority to grant an injunction when there was an arbitration provision. And this court reversed, saying that the district court should have been aware that it had the power to do so. This situation is different, in my view. The district court here never said, I don't think I have the power to do it. The district court said, I'm declining to do it. And here's why. So it's not a case of Aguero where the district court is under the false pretense that it doesn't have the legal authority to enjoin. It knew it was going to do so. It knew it had that power, and it was declining to do so. And I think there was a second part of your question, Judge Diaz, that I am now forgetting. It might have been, but I've forgotten about it. Okay. Can you talk a little bit about the estoppel issue? Because I, you know, just thinking about it, it seems right that, you know, you shouldn't be able to pick and choose your claims and decide which ones are arbitrated and which ones are not. But if the plaintiff in this case had simply rested on its statutory and non-common law claims and not alleged a breach of contract claim, do you think estoppel would be a much more difficult question? I do. And first off, on the application of estoppel, once again, I don't want to lose sight of the ever-important standard of review, which is abuse of discretion. But I do think it would be a more difficult case. This is the easy case. This is where a party comes in and says, you breached a contract that we were a party to, and so pay me money. And we say, okay, there's an arbitration provision in that very contract. Oh, wait a minute. We're not actually a party to that contract. I mean, this is what the Fifth Circuit described as an archetypal example of estoppel. If they had solely brought trade secret claims, didn't reference the contract at all, more difficult case. May still apply, but more difficult. But that's not this case. And unfortunately, sometimes appellate counsel are stuck with the record that they have. And so those are the facts. There's no cutting around it. And I'm not aware of any case, certainly in the papers, any case that we found where a party actually affirmatively sues under a contract that has an arbitration provision and then says, well, I can't be estopped from arbitrating if there's an arbitration provision in that contract. Um, so I have, uh, 36 seconds left. If there's any other questions, I'd be happy to answer them. Thank you very much. Okay. Thank you. Thank you, Your Honor. It's just very briefly in reply to clear up a couple of points. First, with regard to the evidentiary hearing, my friend, colleague, cited to Sneha several times, but he left out the portion of that opinion where the court specifically noted that prior to conducting the final hearing in this, which it considered an evidentiary hearing, the parties had two months opportunity to conduct jurisdictional discovery. And we're not limited in any way by what they argued or presented to the court. Here, we asked twice to, uh, for the permission, as this court, I'm sure is aware, discovery can't begin until Rule 26F conference, and generally does not begin at the lower court level until the parties have been heard on dispositive motions. We asked twice to be able to conduct discovery. That was deemed moot. And this court said in SEC versus Rex, that when the district court limits jurisdictional discovery, it should apply a prima facie standard. Just to follow up to, I think, Judge Agee's questions earlier, during this hearing where the judge is saying, you have 20 minutes to present your case, and you have five minutes to respond. Is there any objection at any point as to the format of the hearing or as to the standard that he's using? There were objections, Your Honor, as to various aspects of the way the hearing was conducted and arguments that were raised on reply. The lawyers were very clear in that hearing that they were trying to follow the court's instructions and limit themselves purely to the briefing. But as to the jurisdictional discovery issue, Your Honor, no, there was no specific raising of that at the hearing. I will note that I don't think it's arguable that the district court applied a prima facie standard in light of the record. In fact, the district court made four factual findings in favor of lack of jurisdiction. It found that Anderson does not solicit South Carolina customers, which we had submitted evidence to the contrary, that Anderson was not approached by a primus in South Carolina, just instead of assuming as true our allegations that they had and had solicited him and engaged him to steal our trade secrets prior to the end of his employment, instead took Imprimis' allegations as credible, that he doesn't solicit customers currently in South Carolina, doesn't service them there, and that South Carolina only accounts for 1% of Imprimis' revenue, something that we were required to take on Imprimis' word. And given the size of the company, that could be substantial. For example, in Universal Leather, this court found that even a million dollars of business in the state of North Carolina could be sufficient to create a specific jurisdiction. I believe Judge Diaz asked the question earlier, and I want to be sure I understand your answer. And the question was, if we can't tell on the personal jurisdiction issue what standard the district court used, does that mean you prevail, at least as to that issue? I would certainly say, Your Honor, I would say if we're up here debating whether or not it was preponderance of prima facie, and it certainly appears that my client below submitted evidence which if taken as true would create specific jurisdiction, then I do think it has to go back down for clarification on which standard was applied and what evidence was considered from my client's side that the court discredited and did not find sufficient. Finally, Your Honors, and I'll conclude with this, as to the preliminary injunction issue, both state and federal law allow the court to enter preliminary injunction to protect trade secrets if there is actual or threatened harm. We have Mr. Anderson here essentially admitting in his declaration and pleadings that he is holding this in case he thinks he may need to use it. And in his filings below, conceded that an injunction, a limited injunction preventing his use, disclosure, misuse of these trade secrets may be appropriate. The claims against Supremis are not arbitrable. No one has argued that they are. We are not going to arbitration in California. So this case is going to be split regardless. I'm just curious as to why you didn't file for an injunction in California because the agreement clearly says that you can. Your Honor, it does. But again, it also cites to the California law and California stat allows us to move for a preliminary injunction in any court where it would be appropriate to seek an injunction. It does not limit it only to California courts. I see that I'm out of time, Your Honors. Thank you very much. I want to thank both counsel for their able arguments this morning. Very much appreciate your being here. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, G. Steven Agee, DeAndrea Gist Benjamin